IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ZACHARY ELLIS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY-SITUATED; GREGORY WESTOVER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY-SITUATED; AND MEGAN CAMDEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY-SITUATED;<br><br>*Plaintiffs,*<br><br>vs.<br><br>VIKING ENTERPRISES, INC., MOHAMAD MASSOUD,<br><br>*Defendants.* | SA-18-CV-00772-ESC |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Before the Court is the above-styled cause of action, in which the parties consented to the jurisdiction of a United States Magistrate Judge [#12, #15]. On October 21, 2019, the parties appeared before the Court through counsel for a bench trial on all remaining issues in this case.[1] After considering the evidence presented at trial, the arguments of counsel, and the parties' post-trial briefs [#37, #38], the Court issues the following findings of fact and conclusions of law.

### **I. Background**

This case arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and this Court has subject matter jurisdiction over this action based on federal question jurisdiction. 28 U.S.C. § 1331. Plaintiffs Zachary Ellis, Gregory Westover, and Megan Camden filed this

---

[1] Pursuant to a Joint Advisory filed May 10, 2019 [#26], the parties agreed to submit all matters to a bench trial.

lawsuit seeking unpaid overtime compensation from Defendants Viking Enterprises, Inc. d/b/a City Ambulance Services ("City Ambulance"), a company operating an ambulance service in San Antonio, Houston, and Dallas, Texas, and its owner and operator Mohamad Massoud. Plaintiffs, former paramedics/emergency medical technicians ("EMTs") working for City Ambulance, contend that they were misclassified as independent contractors during their employment and denied the overtime compensation they are due. Plaintiffs originally filed their Complaint as a collective action but never moved for conditional certification of a class, and the lawsuit proceeded based solely on the individual claims of the named Plaintiffs. Prior to trial, Plaintiff Megan Camden resolved her dispute with Defendants [#34]. Plaintiffs Zachary Ellis and Gregory Westover proceeded to trial.

The parties stipulated to a significant number of undisputed facts and legal conclusions prior to trial. It is undisputed that Ellis and Westover worked for City Ambulance as paramedics/EMTs during the years 2017 and 2018. Their job duties included transporting patients, responding to emergency calls, cleaning and washing the ambulance, performing paperwork, and waiting to be dispatched, among other duties. The parties agree that City Ambulance is a covered employer under the FLSA and was an employer of Ellis and Westover for purposes of the FLSA during the relevant time period. *See* 29 U.S.C. §§ 203(d) (defining "employer" for purposes of FLSA), (s)(1)(A)(ii) (defining FLSA enterprise coverage as "an enterprise whose annual gross volume of sales made or business done is not less than $500,000").

The parties agree that Ellis began his employment on July 31, 2017 as an employee but was reclassified as an independent contractor on August 30, 2017. On February 2, 2018, Ellis was converted back to employee status then resigned his employment on April 2, 2018.

Westover, in contrast, was classified as an independent contractor throughout his employment from July 19, 2017 to March 21, 2018. Plaintiffs typically worked several 24-hour shifts each workweek, and sometimes their shifts lasted longer than 24 hours. Plaintiffs often worked in excess of 40 hours in a given workweek. When classified as contractors, Ellis and Westover were paid a day rate with no overtime compensation.

Defendants admit that Ellis and Westover were misclassified as independent contractors and were in fact non-exempt employees of City Ambulance entitled to overtime compensation. The parties agree that Ellis is owed overtime compensation for the period in which he was classified as an independent contractor from August 30, 2017 to February 2, 2018. The parties agree that Westover is owed overtime compensation for the period from July 19, 2017 to March 21, 2018. In addition to unpaid overtime compensation, Plaintiffs seeks an award of liquidated damages, attorney's fees, and costs of court.

Having stipulated to liability, the parties proceeded to trial on the following three legal issues: (1) whether Defendant Massoud was an employer within the meaning of the FLSA; (2) whether Defendants may deduct sleep time from Plaintiffs' hours worked pursuant to 29 C.F.R. § 785.22; and (3) whether Defendants acted in good faith in failing to pay overtime compensation, such that Plaintiffs are not entitled to liquidated damages. The parties also ask the Court to determine whether Defendants kept accurate records of the hours worked by Plaintiffs and to determine the actual number of hours worked based on the evidence presented at trial, including witness testimony, invoices, and other records.

The general statute of limitations for FLSA claims is two years. 29 U.S.C. § 255(a). The statute of limitations for willful violations of the FLSA is three years. *Id.* This case was filed on July 26, 2018. The relevant period of employment in this case (beginning in July and August

2017) falls within the two-year statute of limitations and therefore willfulness was not alleged by Plaintiffs or at issue at trial.

## II. Findings and Conclusions

After considering all of the evidence presented at trial and the parties' post-trial briefing, the Court makes the following findings and conclusions:

**A.     Massoud is an employer under the FLSA.**

Plaintiffs contend that Defendant Massoud and City Ambulance were both Plaintiffs' "employer" during the relevant time period because Massoud owns and operates City Ambulance, set the company's employment policies, made decisions as to hiring and firing, and established the wage and hour practices challenged in this lawsuit. Accordingly, Plaintiffs ask the Court to hold Massoud jointly and severally liable with City Ambulance for the overtime compensation they are due. Defendants contend Massoud was not Plaintiffs' employer as defined by the FLSA.

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Thus, any employer who fails to pay its employee overtime for hours the employee worked in excess of forty in any workweek is liable under the FLSA (unless that employee is exempt from the FLSA's overtime requirements). *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 250 n.3 (5th Cir. 2012) (citing 29 U.S.C. § 216(b)). As stated earlier, Defendants do not dispute that during the relevant periods, Plaintiffs worked in excess of 40 hours per week for City Ambulance but were not paid

overtime. Thus, Defendants concede City Ambulance is liable but contend Massoud is not an "employer" for purposes of the FLSA.

An employee bringing an action for unpaid overtime compensation must prove by a preponderance of the evidence that there existed an employer-employee relationship during the unpaid overtime periods claimed. *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The Supreme Court has construed "employer" expansively. *Falk v. Brennan*, 414 U.S. 190, 195 (1973). To determine whether an individual or entity is an employer under the FLSA, courts examine the totality of the employment relationship in light of economic realities. *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010); *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669 (5th Cir. 1968). The "economic reality" test embraced by the Fifth Circuit requires courts to inquire into whether the alleged employer: "(1) possessed the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Williams*, 595 F.3d at 620. No single factor is dispositive, and "a party need not establish each element in every case." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014).

Plaintiffs have established by a preponderance of the evidence that Massoud was their employer and is therefore jointly liable with City Ambulance for Plaintiffs' unpaid overtime. Massoud testified at trial that he is the sole founder, owner, and CEO of City Ambulance. Massoud's live testimony establishes that he exercises operational control over City Ambulance; exercises the authority to hire and fire employees; and is responsible for the ultimate decision how to classify and pay his employees. Randy Ream, former Regional Operations Manager for

City Ambulance, testified by deposition that Massoud provided him with the employment contracts used with employees, including Plaintiffs. He also testified that Massoud made the ultimate decisions regarding employees' pay, hiring, and firing. Massoud largely conceded this, and to the extent he attempted to minimize his role in the company's operations, that testimony was not credible when considered against the consistent testimony of the other witnesses. Alex Quinones, Assistant Operations Manager, testified by deposition that Massoud actively managed the business of City Ambulance and that "everything" with respect to the company "went through" him. (Quinones Dep. at 16:21.)

"The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). Defendants' contention that Massoud was not Plaintiffs' employer is not supported by the evidence. Because the evidence establishes that Massoud had the power to hire and fire employees, determined the classification of employees and the rate and method of payment, and actively managed the operation of City Ambulance, the Court holds that Massoud was Plaintiffs' employer under the FLSA.

B. **There was no agreement, express or implied, to deduct sleep time from Plaintiffs' compensable time.**

The parties agree—and the law makes clear—that Plaintiffs are entitled to overtime compensation for all hours worked over 40 hours in a given workweek. Defendants contend, however, that they may deduct sleeping time from Plaintiffs' compensable hours because Plaintiffs worked shifts of 24 hours or more; City Ambulance provided Plaintiffs with sleeping quarters during their shifts; and Plaintiffs spent some time sleeping. Department of Labor

("DOL") regulations explain the circumstances under which an employer may deduct for employee sleep time:

> (a) General. Where an employee is required to be on duty for 24 hours or more, **the employer and the employee may agree to exclude** bona fide meal periods and **a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked**, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. **Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked**.

29 C.F.R. § 785.22 (emphasis added). In short, if there is an agreement between the employer and the employee to exclude sleep time, then the employer may deduct up to eight hours of sleep time from the hours that the employee worked. If no agreement exists, the employer must count the employee's sleeping time as hours worked. Courts look for either an express or implied agreement regarding the exclusion of sleep time. *E.g.*, *Alvarez v. Amb-Trans Inc.*, No. SA-11-CV-179-XR, 2012 WL 4103876, at *8 (W.D. Tex. Sept. 17, 2012). Plaintiffs bear the burden of demonstrating that there was no express or implied agreement authorizing the exclusion of hours worked. *Id.* at *7.

The evidence at trial establishes that there was no agreement between Defendants and Plaintiffs to deduct sleep time from their 24-hour shifts. Massoud, Ellis, and Westover all testified that there was no written or oral agreement. Massoud testified that he believed, however, that Plaintiffs would have plenty of time to sleep throughout their 24-hour shifts. Yet Massoud did not testify that he believed Plaintiffs would have ample time for uninterrupted sleep. To the contrary, Ellis testified that emergency calls would come in throughout the night, and there were days in which he did not sleep at all during a 24-hour or even 48-hour period, when his shifts were consecutive. Nor did Massoud claim that an implicit agreement had been

7

reached, that Plaintiffs understood and expected that they could sleep for eight uninterrupted hours, or that Plaintiffs did in fact always take eight-hour sleep breaks.

Massoud's subjective belief that Plaintiffs might have time to sleep during their shift (and the fact that Plaintiffs did in fact spend some time sleeping) does not constitute an agreement, implied or express, to set aside a bona fide sleeping period and to deduct such time for Plaintiffs' hours worked. "The regulation, by its express terms, anticipates that a regularly scheduled period of time that, at the very least, the employer and employee intend, in *good faith* to be used for sleep, may be deducted from the employee's wages." *Salazar v. Life Ambulance Serv., Inc.*, No. CIV.A.-99-CA-361-EP, 2001 WL 685755, at *2 (W.D. Tex. Feb. 23, 2001). There was no such testimony presented at trial from any witness. Accordingly, the preponderance of the evidence establishes that there was no express or implied agreement authorizing the exclusion of hours worked. *See Alvarez*, 2012 WL 4103876, at *8. Defendants are not entitled to any deduction from Plaintiffs' hours worked in computing Plaintiffs' unpaid overtime compensation, and the Court concludes that all time spent by Plaintiffs on their shifts constitutes compensable working time.

**C.  Defendants did not establish their good faith defense; therefore, Plaintiffs are entitled to liquidated damages.**

A court must award a prevailing FLSA plaintiff liquidated damages in an amount equal to actual damages unless the employer is able to demonstrate a good faith basis for believing its wage practices and employee classifications comply with the FLSA. 29 U.S.C. § 216(b); *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 931 (5th Cir. 2018). "A district court may, 'in its sound discretion,' refuse to award liquidated damages if the employer demonstrates good faith and reasonable grounds for believing it was not in violation." *Id.* (citing 29 U.S.C. § 260).

8

Defendants maintain that they classified Plaintiffs as independent contractors and paid them a day rate in good faith. They therefore contend Plaintiffs are not entitled to liquidated damages.

Defendants' burden to prove the reasonableness of their conduct is "substantial." *Id.* "The burden is a difficult one to meet; 'double damages are the norm, single damages the exception.'" *Dalheim v. KDFW-TV*, 712 F. Supp. 533, 539 (N.D. Tex. 1989) (quoting *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987)). To prove "good faith," an employer must show it "had an honest intention to ascertain what the [FLSA] requires and to act in accordance with it." *Brantley v. Inspectorate America Corp.*, 821 F. Supp.2d 879, 895 (S.D. Tex. 2011) (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1566 (11th Cir. 1991)). "[G]ood faith requires some duty to investigate potential liability under the FLSA." *Barcellona v. Tiffany English Pub., Inc.*, 597 F.2d 464, 469 (5th Cir. 1979). The reasonableness of Defendants' conduct also has an objective component; an employer may not rely on ignorance alone as reasonable grounds for believing it did not violate the FLSA. *Id.*

The most common means of proving good faith is where an employer proves reliance on the advice of the DOL or the advice of counsel on its classification and wage practices. *See, e.g.*, *Lee v. Coahoma Cty., Miss.*, 937 F.2d 220, 227 (5th Cir. 1991) (holding district court did not abuse its discretion in refusing to award liquidated damages where defendant sought advice of counsel, who had attended a seminar on the FLSA and consulted with DOL, in structuring compensation plan which complied with the Act). Here, Defendants do not contend that the DOL blessed their pay practices or even that they ever sought the DOL's advice. Instead, Defendants' assertion of good faith rests on their claim that Massoud contacted an attorney before classifying Plaintiffs as independent contractors and reasonably relied on the attorney's

9

advice. But the testimony and evidence on this point are ambiguous at best, and for the most part, not credible.

To be clear, Massoud does not contend that he contacted an attorney for advice on whether Ellis or Westover specifically could be classified as independent contractors based on their job duties. Nor did he testify that he contacted an attorney to specifically ask whether City Ambulance paramedics/EMTs could be classified as independent contractors. He merely testified that he contacted an attorney at some point, years before Ellis and Westover were hired, and requested that the attorney prepare form employment and independent contractor agreements for his company to use. The exact impetus for this request is unclear, but some testimony suggests Massoud initially contacted the attorney to seek advice related to sales people, not EMTs.

Massoud himself equivocated when questioned on the precise nature of the advice he sought or received. Upon direct examination, Massoud testified that he believed if he had a worker (any worker, regardless of his or her position) execute the form independent contractor agreement, then that worker could be treated as an independent contractor and paid on a day rate without overtime compensation, and that arrangement would not run afoul of the FLSA's overtime compensation requirements. Whether a worker is an employee or an independent contractor depends on the factual relationship between a company and that worker, such as the degree of control exercised by the company. *See Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (listing factors for consideration in evaluating employee status under FLSA). Massoud does not claim that he sought or obtained any advice on whether his company's paramedics could be classified as independent contractors based on these factors. And his contention that he reasonably believed that he could transform any worker, regardless of the

worker's position or duties—even those currently classified as employees, like Ellis—into an independent contractor by requiring them to sign a generic independent contractor agreement is not credible.

The fact that the majority of City Ambulance's paramedics were classified as employees, and Westover testified that he was required to sign both an employment and an independent contractor agreement at the same time as a condition of his employment, further discredits Massoud's testimony that he reasonably believed he was acting in compliance with the FLSA in choosing several paramedics to classify as independent contractors. Moreover, Massoud's claim that it was reasonable to rely on the advice of this particular attorney on worker classification issues is undermined by his own deposition testimony, in which he stated that he did not know if the attorney had a specialization in employment law and conceded that he never sought any legal advice on whether or not you could properly or legally classify City Ambulance's EMTs as independent contractors. (Massoud Dep. at 21:6–10.)

Merely contacting an attorney, without evidence of seeking specific advice on and investigation into FLSA compliance, does not demonstrate a good faith reasonable belief in the legality of an employer's practices. *See Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, 562 Fed. App'x 182, 186 (5th Cir. 2014) (affirming district court's rejection of employer's good faith defense based on "bare agreement with counsel that [it] had spoken to an attorney and an unnamed consultant when forming its opinion that the plaintiffs were not employees" without any evidence of actual investigation into plaintiffs' employment status); *Carmack v. Park Cities Healthcare, LLC*, 321 F. Supp. 3d 689, 708–09 (N.D. Tex. 2018) (granting summary judgment to employee on issue of liquidated damages where employer's evidence merely established she had general conversations with attorneys regarding the FLSA, without any evidence of reliance on

specific advice regarding payment of overtime). This is particularly true where the evidence is vague as to the precise nature of the advice given, as here, such that the Court cannot effectively evaluate the objective reasonableness of the purported advice or the reasonableness of the employer's reliance on that advice. *See Carmack*, 321 F. Supp. 3d at 708. Massoud's generalized testimony that he relied on the advice of counsel is insufficient to demonstrate a good faith belief in compliance with the overtime requirements of the FSLA.

Good faith "requires more than ignorance of the prevailing law[;] [i]t requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Id*. at 709 (quoting *Reich v. S. N.E. Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). Defendants have not persuaded the Court that Massoud actively sought to the advice of counsel to ascertain the requirements of the FLSA, the definition of an employee under the Act, and whether he could legally classify his paramedics as independent contractors. *See id.* Accordingly, his claimed reliance on an independent contractor agreement drafted by an attorney as compliance with the FLSA's overtime provisions is not objectively reasonable and does not constitute a good faith defense to the imposition of liquidated damages.

Finally, Massoud's testimony that Ellis and Westover desired to be classified as independent contractors changes nothing. Even if true, an employee's desire to be misclassified does not insulate an employer from its obligations to comply with the FLSA. The employer maintains a duty to investigate potential liability under the FLSA and to ensure compliance with the FLSA's requirements. *Barcellona*, 597 F.2d at 469. As is explained above, an employer's purported ignorance of the law does not constitute reasonable grounds for believing it acted in compliance with the FLSA, and neither is the employer's reliance on an employee's (incorrect) understanding of the FLSA.

In sum, Defendants bear the substantial burden to overcome Plaintiffs' statutory entitlement to liquidated damages by showing their subjective and objective good faith in classifying Plaintiffs as independent contractors and failing to pay them overtime compensation. Defendants have failed to carry this burden, and the Court declines to exercise its discretion to deny Plaintiffs the recovery of liquidated damages.

**D.   Plaintiffs satisfied their evidentiary burden regarding overtime hours worked.**

The FLSA requires employers to "make, keep and preserve . . . records" of an employee's hours. 29 U.S.C. § 211(c). But here, in the trial context, it is Plaintiffs' burden to prove their damages—that is to say, that they performed work for which they were not properly compensated. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 251. "When the employer has kept proper and accurate [time] records the employee may easily discharge his burden by securing the production of those records." *Id.* at 687. "But where the employer's records are inaccurate or inadequate," the employee can carry his burden by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 686–87. "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88; *See also Rosales v. Lore*, 149 Fed. App'x 245, 246 (5th Cir. 2005). Plaintiffs contend that Defendants failed to keep accurate records of their hours worked such that Plaintiffs' testimony and evidence is sufficient to establish the number of uncompensated overtime hours worked.

The evidence before the Court demonstrates that Defendants failed to keep adequate records of the hours worked by Plaintiffs. Thus, the Court must reconcile the inconsistencies in

the testimony and documentary evidence to approximate the hours of uncompensated overtime worked by each Plaintiff and the overtime compensation due. In making these calculations, the Court considered the sworn testimony of Ellis and Westover as well as the documentary evidence they offered in support of their testimony, including calendars reflecting Ellis's scheduled shifts; the emails reflecting Westover's scheduled shifts; invoices generated by Plaintiffs for work performed in each pay period; and the respective summaries of hours worked created by Plaintiffs and Defendants. This evidence indicates that Plaintiffs' shifts were often scheduled, rescheduled, and changed in the days immediately preceding a given work week, making it difficult to tie invoices generated by Plaintiffs for payment to the other evidence purportedly reflecting the specific days Ellis and Westover worked in every instance. Nonetheless, based on the credible testimony by Westover and Ellis regarding how they prepared their summaries and invoices, the invoices and summaries sufficiently approximate the overtime compensation Plaintiffs are due.

Based on the evidentiary record and the testimony of the witnesses at trial, the Court finds that Ellis worked 1,072 hours of uncompensated overtime and Westover worked 2,616 hours of uncompensated overtime.[2] Plaintiffs satisfied their burden with respect to the hours worked and Defendants failed to negate the reasonableness of Plaintiffs' position. *See Anderson*, 328 U.S. at 686–88.

The parties agree, and the law requires, that Plaintiffs' overtime compensation should be calculated on a workweek-by-workweek basis in which gross weekly pay (days worked in a

---

[2] The summary of hours worked provided by Plaintiffs for Ellis include several pay periods outside of the weeks in which Ellis was designated as an independent contractor. The Court has limited Ellis's uncompensated overtime hours to those worked between the period from August 30, 2017 to February 2, 2018, in which the parties agree he was paid a day rate without overtime compensation as an independent contractor. *See supra* at I, p. 2–3.

week multiplied by Plaintiffs' day rate) is divided by the number of hours worked that week to arrive at the regular rate. *See* 29 C.F.R. § 778.112 (setting forth the method for calculating overtime for employees paid day rates). Because Plaintiffs' day rate already compensates them at their straight-time rate for their overtime hours, they are only owed an overtime premium for their overtime hours. *See id.* The overtime premium is calculated by dividing the regular rate in half, for a "half-time" rate. *See id.* This "half-time" rate is multiplied by the number of overtime hours to determine the amount of overtime pay owed for a given week. *See id.*

Ordinarily, a regular rate must be calculated on a weekly basis, because the total weekly compensation must be divided by the total hours worked for each workweek, and the regular rate can differ from week to week. *See* 29 C.F.R. §§ 778.109. But in this case, the parties do not dispute that Plaintiffs were always scheduled for—and worked—24-hour shifts, and they were always paid a flat day rate for each 24-hour shift. Although Plaintiffs testified they occasionally worked longer than 24 hours, in approximating the back overtime due, they erred on the side of underestimating the overtime compensation due and assumed 24-hour shifts. For this reason, each Plaintiff's day rate stayed constant (his day rate divided by 24), except, as is explained below, Westover worked for a period at one rate and later at a higher rate.

The invoices and summaries produced by Plaintiffs demonstrate that Ellis was paid a day rate of $300 for each week during the period relevant to this lawsuit. Ellis contends, however, that beginning with the pay period ending on November 4, 2017 (90 days into his employment), his day rate increased to $325 based on an oral agreement with his employer. Aside from Ellis's invoices reflecting the higher rate (which were prepared by Ellis himself), there is no written documentation regarding Ellis's understanding of this alleged pay increase, nor is there any documentary evidence that Defendants agreed to the higher rate. Although some of Ellis's

invoices billed City Ambulance at this increased rate, City Ambulance consistently paid at the original $300 rate. Ellis and City Ambulance apparently discussed the possibility of increasing Ellis's daily rate after 90 days, but the parties dispute whether there was in fact an agreement reached on this point, and Mr. Reams testified in his deposition that the reason Ellis was transitioned back to employee status (as opposed to independent contractor) in February 2018 was his submission of invoices for $325 instead of the agreed $300 rate. (Reams Dep. at 11:9–20). Plaintiffs failed to produce sufficient evidence or testimony at trial regarding the details of any alleged agreement to increase Ellis's daily rate. While a higher rate may have been discussed, the evidence does not suggest that a final agreement was reached between Ellis and Defendants to be compensated at this higher rate. The Court will therefore not use this higher pay rate in calculating Ellis's overtime compensation.

The Court therefore finds that Ellis's hourly rate for purposes of calculating overtime compensation is $12.50 ($300 ÷ 24). Ellis's half-time rate is $6.25. Multiplying this half-time rate by 1,072 (the number of hours worked by Ellis) equals $6,700, the overtime compensation Ellis is due. Ellis is entitled to an equal amount in liquidated damages. *See* 29 U.S.C. § 216(b).

Westover has two hourly rates: the first based on a day rate of $400 from July 19, 2017 to February 3, 2018 (hourly rate of $16.67); the second based on a day rate of $425 from February 4, 2018 to March 21, 2018 (hourly rate of $17.71). Westover worked 2,200 overtime hours at $16.67 per hour (half-time rate of $8.34 per hour) and 416 overtime hours at $17.71 per hour (half-time rate of $8.86). Westover is therefore entitled to $18,348 in overtime compensation for the time period in which his day rate was $400 and $3,685.76 in overtime compensation for the time period in which his day rate was $425 for a total of $22,033.76 unpaid

16

overtime wages. Westover is entitled to an equal amount in liquidated damages. S*ee* 29 U.S.C. § 216(b).

Defendants City Ambulance and Massoud are jointly and severally liable for these amounts because all employers within the meaning of the FLSA are jointly and severally liable for all damages that stem from a failure to comply with the Act's overtime requirements. *See Lee*, 937 F.2d at 226.

**E.     Plaintiffs are entitled to attorney's fees, and the parties should submit dismissal papers for Camden.**

Plaintiffs pleaded the recovery of attorney's fees in their Complaint. (Compl. [#1] at 5.) An award of attorneys' fees to a prevailing plaintiff in an FLSA case is mandatory. 29 U.S.C. § 216(b) ("The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

This Court has discretion to determine the reasonableness of the fees. *Tyler v. Union Oil Co. of Calif.*, 304 F.3d 379, 404 (5th Cir. 2002). Plaintiffs may file a separate motion to recover attorney's fees and bill of costs as dictated by this Court's Local Rules. *See* Loc. R. CV-7(j), CV-54. The parties are instructed to confer on Plaintiffs' attorneys' fees demand and attempt to reach agreement on what constitutes a reasonable fee award. The parties are also instructed to confer on costs prior to Plaintiffs submitting a Bill of Costs (using the form available on the Court's website). Plaintiff should include a certificate of conference with their Bill of Costs and notify the Court if any costs remain in dispute. If an agreement cannot be reached as to costs, Defendants may file an objection.

The parties are also instructed to submit their final settlement papers regarding Camden. If the parties require court approval of that settlement, the parties may submit the settlement

agreement under seal.

SIGNED this 22nd day of November, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE